ORIGINAL



RECEIVED
JAN 21 2015
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------

PATRICK GEORGE,

      Plaintiff,

      -against-

CITY OF NEW YORK; LEONARD JOBLOVE,
CAMILLE O'HARA GILLESPIE, GAMALIEL
MARRERO, Individually and as Members of the
Brooklyn District Attorney Office, JANE DOE,
JOHN DOE, New York City Police  Department

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CV 15 - 0312**

COMPLAINT

Index No.

JURY TRIAL DEMANDED

      Plaintiff PATRICK GEORGE ("Plaintiff"), whom is not in Custody nor on Parole, makes no claims of Malicious Prosecution, Malice, or Innocence, complaining of the Defendants, respectfully alleges, upon my own Direct Personal Knowledge under All Penalties of Perjury in this 39 page Complaint, as follows:

## NATURE OF ACTION

      1.      This is a civil action, pursuant to 42 U.S.C. §1983, 1985(3) and 1988, and *Brady v. Maryland,* 373 U.S. 83 (1963) *("Brady"),* POVENTUD v. CITY OF NEW YORK, Docket No. 12–1011–cv. Decided: April 19, 2013, COLLINS v. CITY OF NEW YORK, Docket No.11-00766. seeking the Vacating of Indictments for Plaintiff s wrongful Arrest for attempted murder , and subsequent imprisonment for nearly *six and half years*, prior to this, wrongful arrest for Rape. I was repeatedly fighting of sexual Gays and physically

1

assaulted, traumatized, Loss of Earnings and Loss of Travel caused by the pervasive

misconduct of the Defendants Kings County District Attorney's Office ["KDAO"] and the

New York City Police Department ["NYPD"] .

2.    Defendants -individual District Attorney Office and the City of New York -

violated, or caused the violation, of Plaintiff's constitutional rights both during the

investigation of Probable Cause of the underlying crimes -a -shooting -and Rape- during

Plaintiff s subsequent arrest. The District Attorney manufactured the false identification

evidence and Testimonial evidence that became the basis for the my indictment and the only

evidence of plaintiff's "guilt," and then withheld from the record Plaintiff and his attorneys

exculpatory evidence, known as *"Brady* material," that would have shown the falsity of the

identification testimony (Indict#11047/90) and false Testimony that any crime happened

(Indict#4166/87). Their misconduct was substantially caused by the policies, customs, training

and practices of policymakers for the City of New York.

3.    This lawsuit seeks to hold the defendant CITY OF NEW YORK liable for the

above misconduct under the federal civil rights statute, 42 U.S.C. § 1983, and Monell v.

Dept. Of Social Services, 436 U.S. 658 (1978) and Askins v. City of New York et al., 12-

877-cv (2012), POVENTUD v. CITY OF NEW YORK, Docket No. 12–1011–cv. Decided:

April 19, 2013, COLLINS v. CITY OF NEW YORK, Docket No.11-00766. The unlawful

actions of police detectives and prosecutors documented in this lawsuit resulted from

affirmative or defacto municipal policies, practices and customs to violate the constitutional

rights of criminal suspects and defendants, or from deliberate indifference by policy-making

officials, acting on behalf of the City of New York, to such violations. As Plaintiff will

demonstrate, both the NYPD and the BDAO, as a matter of policy, secretly coerced

witnesses to give false or unreliable testimony through their material witness orders, and their powers of arrest and interrogation , unlawfully concealed exculpatory or impeachment evidence known as "Brady" material , and lied to or misled courts, defense attorneys, and criminal defendants in order to cover up their unlawful behavior. In the rare case where such misconduct was exposed, these agencies took no disciplinary action against the offending employees, but instead praised and promoted them, thereby encouraging future constitutional violations to occur, including those directed against Plaintiff.

4.     As explained in more detail below, investigator's assigned to the investigation Of Attempted Murder and the separate case of Rape knew any information was unreliable, and false because I was in Police Custody at the time of the shooting and I did not match the description of any shooter nor was there any  on scene  Identification, yet still allowed testimony into the Grand Jury that I was Id as 1 of the shooters. (Indict 11047/90)

5.     As to Camille Moreno the District Attorney knew before I was arrested that and information given by Camille was unreliable and false because she told them and testified at the Grand Jury that I dragged her 2 blocks, pass my father, pass my cousin while she was yelling beat her up and raped her. (Indict 4166/87)

6.     That Theo came in and saved her from me raping her and Theo and myself was fighting over her. (Indict 4166/87)

7.     DA had its possession the following Brady Material, exculpatory evidence, their ME report that clearly stated after a complete investigation, no signs of bruises, lacerations, no signs of force period. So they knew before I was arrested that that any allegations of fighting, force was unreliable. False. (Indict 4166/87)

3

8.  The DA its possession the following Brady Material, exculpatory evidence and Police: they spoke with Theo before I was arrested on multiple occasions and he told them Camille slept with me by consent and the story about him saving her from me and fighting over her is a lie. (Indict 4166/87)

9.  DA claims I plead Guilty to the rape of Stephanie Stevenson.

10.  DA told Federal Judge Sifton that I was arrested for raping her.

11.  I presented my rap sheet proving this never happened. This has never been challenged.

12.  Years later the DA changed their testimony to now say it was a secret Indictment. The law is clear that you cannot stand before any Judge absent a arrest and when secret Indictment happens, the Judge Must issue a warrant for your arrest, in which you must be re-photographed, re-fingerprinted and then brought before the Court.

13.  In my Plea allocution I was asked not 1 question about Stephanie Stevenson.

14.  No medical evidence as I have stated lets do a dna test

15.  No medical report

16.  Nothing outside of Stephanie Stevenson alleged complaint corroborating her alleged story. It is my position she never told the DA this. Stephanie Mother was in my trial with my mother. In trial after the miss-trial was declared and her name came up, Attorney Michael Warren told the DA Stephanie Stevenson mother is sitting next to Ms. George file a complaint now if you feel he did something to her daughter.

17.  I was to pick up this portion from Stenographer Barbara Stroh but on the day I was to get them from her I was violated by parole and from jail etc have been trying to retrieve them ever since.

4

18.  I have been trying for over nearly 30yrs to get access to this portion of the trial minutes and it has been blocked by the DA. This Court is aware of this as I complained repeatedly about this in my Habeas Corpus and to letters to both State and Federal Courts. I have put in Subpoenas, everything. Motions to Compel.

19.  The DA either states the Stenographer cannot be located or that the records have been destroyed. Under the law Stenographer notes are to be kept for 50yrs, and Transcripts are to be kept for 25yrs from the last disposition. Neither time period has passed. I specifically requested the raw Original Stenographer notes and Transcripts.

20.  I recently in the past Month via a private investigation Found Court Stenographer Barbara Stroh whom told me she is still in the Court System. She told me that she never wrote a letter to any Judge stating that the records are destroyed and that she will order her files from the State archives and see if she can still retrieve it.

21.  I personally believe that the DA is giving her trouble and threatening her. Ms. Stroh told me this years ago when I 1st purchased transcripts from her she told me the DA was threatening her. The DA told Federal Judge Sifton that no Medical Examiner of theirs testified, and No Theo Gordon or Julian Best testified. I then produced the trial transcripts I purchased proving that the DA was lying to the Court. They then said well they are just relying on the Court records.

22.  1st tip off that the DA was staging the Court record, so I would have no Material Brady evidence in the file. Also that they knew that when she testified that I beat her up, force was all unreliable. False. The DA knew this.

23.  I already told the Police from day 1 I slept with Camille without a condom and ejaculated in her. So the only reason for the Medical examiner was to verify if there was any signs of Force as Camille said happened. The DA always said in the arraignment hearing and

5

in the Grand Jury hearing that I beat Camille up and raped her. Nothing about threats as to the reason for her allowing me to sleep with her.

24. The Police had me strip in my house in front my Mother as I was a minor they said. Shined flashlights on me. I had no scratches. Nothing. I told them sex was by consent.

25. Indeed, in trial Attorney Michael Warren was using the Grand Jury testimony of Camille to impeach her, when in trial she testifies my knees was on her hands but in the Grand Jury she testified that my knees was on her chest holding her down and we she never consented and she fought to the bitter end and Theo came to save her from me. The exact same facts the DA was telling the Court for a year up too my Trial.

26. DA Weintruab kept objecting to using the Grand Jury transcripts to impeach Camille and said he will stipulate entering the file in the record. He did this deliberately to Block the following facts.

The DA knew from the beginning that Camille was lying on me that I beat her up , dragged her and raped her. Her testimony was unreliable as it was refuted by their own Medical Examiner and Theo Gordon and Julian best who were friends to both of us, me and Camille.

27. The law is crystal clear. When the DA knows that testimony that was false presented to the Grand Jury the Indictment must be dismissed, and the Court lacks jurisdiction over the defendant. It does not matter when they find out that the testimony was false.

28. The DA had in its possession the following Brady Material, exculpatory evidence that they saw to it that would not be entered into evidence, and the Judges in their 440 Post Conviction decisions deliberately did not mention. That the 911 Tape and Report proved that I did not match the description of any shooter, nor was there ever any on scene Identification made by anyone.

29.   . Additionally they conceded this in my arraignment hearing and my bail was dropped from 100k to 50k. When the Prosecutor was giving the Judge the facts of the case when they said the shooters was 6ft tall the Judge look at me and said wait a minute he is nowhere near 6ft tall.

30.   My Lawyer Dovid Klien then said your Honor nor did he match the description of the shooter or was he ID as the Shooter. The Judge looked at the DA and is this true. No response from the DA. Judge asked again, is this true he doesn't match the description of any shooter, no response from the DA. My Lawyer Dovid Klien then said he was in Police Custody at the time of the shooting.

31.   The Judge then asked what was the damages, and found out none was hurt. The Judge dropped my Bail from 100k to 50k and told my Lawyer and I quote "I expect you will be filing a Motion for your client".

32.   My Attorney Dovid Klien did file a Motion that clearly stated based upon the 911 report and 911 tape not only did I not Match the description of any shooter, but there was never any  on scene  ID on scene  show-up ever. I was never ID as one of the Shooters by anyone and requested to review the Grand Jury Minutes.

33.   I asked him why the Motion does not contain the fact that I was in Police Custody. Mr. Klien said he will bring it up during the Motion hearing because under the Law he has to give them time to verify.

34.   Subsequently I was told by the Prison to call my Lawyer and it was important. I called him and Mr. Klien told me he could no longer represent me and that the DA is threatening to have him disbarred for the Motion he filed to dismiss my case.

35.   I never heard from him again and I then hired Attorney Debra Hoskins. She tried in my Wade hearing to Lay a foundation to enter the 911 Report and Tape and the fact

7

that I was Police Custody proof by way of my Rapsheet into Court Record\Evidence, this Brady, exculpatory Material Evidence and all was denied by Judge Douglas.

36.    So it was not ever in the record, as him denying entrance of putting the Brady Material on the record, Nor did Ms. Hoskins get the chance to ask to have it entered into Evidence. This evidence directly impeached the Testimony being given by the Officer whom testified the only reason he came in my direction was because of what was told to him by the complaining witness.

37.    Also the Lab report for the recovered gun was certified incorrectly and the Court of Appeals ruled until the DA the report corrected the indictment, the Court lacked jurisdiction over you. Along with every Judges Denial in the Post Conviction without a hearing, and deliberately being Silent about the contents of this Brady Material.

38.    So I could not even Appeal the denial of the 440 as they stage the record that I have no Material Official evidence to put on the record. So because of illegal legal maneuvering I have evidence in my possession for nearly 30yrs that has not been heard or offered or denied being offered on the record in any Court. In bringing this case the District Attorney's Office and causing that Office to initiate a prosecution, they then failed to disclose the false identification, or/and denied me the right of Brady Material even offered to be put into evidence record, Plaintiff Plead guilty, and causing Plaintiff to be sent away to State prison.

39.    When the District Attorney's Office ultimately learned about the withheld *Brady* material, it had an obligation to disclose it and to remedy the injustice caused by its previous suppression. Instead, it first tried to cover it up. When this proved impossible, it then prolonged Plaintiff's incarceration by relying on the knowingly false claims.

40.    Indeed, not only did they get rid of my Attorney Dovid Klien by threatening to

8

disbar him for Offering the Brady Material, Official proof that I wasn't not the Shooter and the Prosecution knew this but still charged me with the crime that if convicted could put me away for 25yrs in State Prison.

41.   Plaintiff seeks to recover monetary damages from the individual ADA's and Judges who knew the false case against him and covered up the exculpatory evidence, and against the City of New York, pursuant to *Monell* v. *New York City Department of Social Services,* 436 U.S. 658, 98 S. Ct. 2018 (1978), Askins v. City of New York et al., 12-877-cv (2012) and POVENTUD v. CITY OF NEW YORK, Docket No. 12–1011–cv. (2013), for the deliberate indifference of policymaking officials at the Brooklyn District Attorney's Office ("KDAO") to such types of constitutional violations, which was a substantial cause of the wrongdoing that occurred in this case.

STATEMENT OF JURISDICTION

42.   At all times herein mentioned, Plaintiff was a resident of the County of Kings, City and State of New York.

43.   Defendant CITY OF NEW YORK ("Defendant CITY") is a municipal corporation existing by virtue of the laws of the State of New York.

44.   The District Attorney is an agency of the Defendant CITY, and all District referred to herein were at all times relevant to this complaint its employees and agents.

45.   Defendant LEONARD JOBLOVE ("Defendant JOBLOVE"), was at all relevant times a ADA employed by the NY District Attorney. He is named here in his official and individual capacities.

46.   Defendant CAMILLE O'HARA GILLESPIE ("Defendant GILLESPIE"),

was at all relevant times a ADA employed by the NY District Attorney. She is named here in his official and individual capacities.

47.  Defendant GAMALIEL MARRERO ("Defendant MARRERO"), was at all relevant times a ADA employed by the NY District Attorney. He is named here in his official and individual capacities.

48.  Defendant DAVID WEINTRAUB ("Defendant WEINTRAUB"), was at all relevant times a ADA employed by the NY District Attorney. He is named here in his official and individual capacities.

49.  At all times material to this Complaint, the aforementioned individual Defendants acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York, and within the scope of their employment.

50.  The District Attorney's Office of Kings County is an agency of Kings County, a constituent county of the City of New York, and of the State of New York.

51.  The Former District Attorney and Assistant District Attorneys of Kings County are agents and employees of both Kings County and of the City of New York.

INVESTIGATIONS THAT HAPPENED BEFORE LOCAL COURT ARRAINGMENT

The Investigation of the shooting at Austin Neptune

52.  The victim in the underlying criminal case was a from my understanding was infront his house with many people playing outside and 2 shooters, 6ft tall with mask ,1 wearing blue jacket black pants and the other wearing a red jacket grey started shooting at him. Same exact description given by atleast 5 witnesses who called as the shooters ran pass their house.

53.  Detectives came on the scene and no time did they radio in a different

10

description from what they responded on the scene initially.

54.  I was released from Police Custody an hour away while the shooting was happening; I later was arrested down the block from the scene.

55.  I was arrested by police and a gun was recovered.

 Pre-arraignment Investigation

56.  I told the Court that I was in Jail when the shooting happened and that the Police was saying I did not match the description of the shooters when they were discussing this at the station. I told them this before I stood before the Court for arraignment.

57.  The DA never investigated my claims or allows me to testify before the Grand Jury as I gave them notice in arraignment.

AFTER INDICTMENT

58.  My Attorney repeatedly asked for fingerprint Analysis because I did not have any weapon in my possession. They never produced any fingerprint analysis

59.  We requested ballistics that the gun recovered was the same that was part of the shooting. None was given. DA said bullets damaged during testing.

60.  That the 911 Tape and Report proved that I did not match the description of any shooter, nor was there ever any on scene Identification made by anyone. Additionally they conceded this in my Bail Hearing and my bail was dropped from 100k to 50k.

61.  When the Prosecutor was giving the Judge the facts of the case when they said the shooters was 6ft tall the Judge look at me and said wait a minute he is nowhere near 6ft tall. My Lawyer Dovid Klien then said your Honor nor did he match the description of the shooter or was he ID as the Shooter. The Judge looked at the DA and is this true. No response from the DA. Judge asked again, is this true he doesn't match the description of anyshooter,

11

no response from the DA.

62. My Lawyer Dovid Klien then said he was in Police Custody at the time of the shooting. The Judge then asked what was the damages, and found out none was hurt. The Judge dropped my Bail from 100k to 50k and told my Lawyer and I quote "I expect you will be filing a Motion for your client".

63. My Attorney Dovid Klien did file a Motion that clearly stated based upon the 911 report and 911 tape not only did I not Match the description of any shooter, but there was never any  on scene  ID\ on scene or  show-up ever. I was never ID as one of the Shooters by anyone and requested to review the Grand Jury Minutes.

64. The DA then threatened to disbar Attorney Dovid Klien because of the Motion he filed with official material evidence: 911 report and tape that proved not only did I not match the description of any shooter, but there was never any  on scene  ID\Show up of any kind.

65. They (Defendants) failed to allow to be offered to the Court to be put into evidence any report that would reveal or draw attention to the erroneous identification.

66. Following Plaintiff s indictment, Plaintiff s counsel made a specific request of the prosecution to disclose whether any witness had "identified anyone other than defendant or codefendant as perpetrators of the crimes charged," and to disclose "all evidence and information . . . which may tend to exculpate defendant either by an indication of his innocence, or by potential impeachment of a witness to be called by the District Attorney within the meaning of *Brady v. Maryland,* 373 U.S. 83 (1963) and *People v. Rosario,* 9 N.Y.2d 286 (1961)."

67. Under the *Brady* disclosure rule, the prosecution has a continuing obligation  to not

suppress from the Court the offering Brady material information favoring the criminal defendant in the possession, custody or control of the District Attorney's Office or the NYPD, especially where the defendant specifically demands such disclosure. In a specific-demand case, the prosecutor's failure to disclose is likely to mislead the defense into assuming that such evidence does not exist, and thus the prosecution's disclosure obligation is heightened.

68.    In addition, under the related *Rosario* rule, the prosecution has an obligation to disclose and allow the defense all prior recorded statements of each of its trial witnesses, so that counsel for the accused may determine whether such statements may be used to cast doubt on the witness's testimony.

69.    Following Plaintiff's indictment, Plaintiff's counsel made a specific request of the to have complaining witness id me in Court and to question how the id was made within the meaning of Unites States v. Wade 388 U.S. 218 (1967)

70.    Under WADE, the prosecution has a obligation to disclose witnesses to be cross-examined by defense as to whom they Id and the accuracy of the identification.

71.    So I know had to pay Attorney Debra Hoskins. They refused to have her revisit the Motion Attorney Dovid Klien filed, to inspect grand jury minutes and dismiss indictment. So we had the WADE Hearing and had Brady material evidence consisting of the 911 tape, 911 report that proved I never matched the description of any shooter, nor was there any onscene ID of me by anyone as the shooter and my rapsheet proving I was Police Custody when the shooting occurred. We were denied the right to use this material, Brady, exculpatory evidence, to impeach the Police offer testimony.

72.    This Brady, exculpatory evidence proved at the time of the shooting, I was nowhere near the scene and I did not match the description of any shooter.

73.   The police testified that the only reason he approached me was because of the complaining witness testimony. The police said I was just standing on the corner doing nothing. Officer testified that I was wearing a long white T-shirt down to my knees red logo on front.

74.   My clothing description in no way matched the description that the Police responded on the scene to. Descriptions that were given by 6 different witnesses whom called in to 911 as the shooting was occurring, nor did my height.

75.   Under Wade, Brady and Rosario I had the right to use the 911 Tape, Report and rapsheet to prove that I did not match the description of any shooter, that there was never any on scene  ID of me by anyone. To impeach the testifying officer's testimony, who by the way was the only person to testify at the Wade Hearing.

76.   I was denied the right to even lay a foundation in the Wade hearing to offer into evidence Brady Material that shows that I did not match the description of any shooter and at the time of the shooting I was in Police Custody

## INVESTIGATIONS THAT HAPPENED BEFORE LOCAL COURT ARRAINGMENT

### The Investigation of  Arrest for  Rape of Camille Moreano

77.   April 15th I slept with Camille by her consent. Theo Gordon came he spoke with her while she was still in bed.

78.   The next day Police came to my house claiming Camille said I beat her up, dragged her from the store 2 blocks way and raped her. They had me strip shined flashlights on me. I had no scratches. Nothing. Police asked and I told them yes I slept with Camille but did not rape her. They said they will be back.

14

79. The DA called me and I told them the same story. The DA called Theo because Apparently Camille told them that Theo saved her. I was there for 2 of the calls at his house by the DA. Theo told him she told him sex was by consent and that the story about him saving her and us fighting over her was a lie. Police interviewed Theo as well several times in which he told them the same thing. Theo also testified to the same at Trial.

80. 2 weeks later I was arrested. DA had in its possession their Medical Examiner report proving no force. Theo testimony that Camille said sex was by consent and that she was lying when she told them that he saved her from me. Theo told this the DA and the Police on Several occasions before I was arrested.

81. All evidence controverted all claims of rape. Nothing corroborated Camille claims. All evidence corroborated everything I told the Police and the DA yet still I was arrested in violation of my Due Process Rights not to be arrested absent Probable Cause.

<u>The Investigation of the Rape of Stephanie Stevenson</u>

82. No idea what is going on. I was never arrested nor questioned about anything to do with Stephanie Stevenson. I do not believe she ever filed a complaint.

83. Due Process clearly states before I am made to appear before any Judge I must be Arrested, Finger Printed and have my Photograph taken.

84. The DA alleges that in satisfaction of the Camille indictment I plead Guilty to Stephanie as well. This is impossible as I was never arrested.

85. I even offered DNA.

86. Due Process states that I can only be arrested based upon testimony that is

15

Corroborated by independent evidence outside of the testimony given. No medical evidence, Witnesses or anything corroborated the alleged testimony given, so there was no Probable Cause in the meaning of Due Process.

87.    Due Process of law states that you cannot have Probable Cause based upon uncorroborated statements made by 2 individuals. Each statement by each Individual must be independently corroborated by fact\evidence outside of their own statements.

<u>The Habeas Corpus in Federal Court and State Court 440 Post conviction Motions</u>

88.    I filed my Writ in Federal Court and PostConviction 440 on the grounds of Materially False testimony knowingly used against me in the Grand Jury Hearing. State Law clearly states this renders the indictment defective and until it is correct the Court is acting in excess of Jurisdiction. As well as no Probable Cause, and no jurisdiction and Brady Violations.

89.    Defects of a Jurisdictional nature survive a Guilty Plea as it is a non-waivable defect.

90.    Habeas Corpus in 1995 was filed in which the Prosecution deliberately lied to Judge Sifton stating that I was arrested for the rape of Stephanie Stevenson.

91.    This is where I 1st heard that I raped Stephanie Stevenson. My Writ had to do with Camille Moreno and the Shooting of Austin Neptune.

92.    This Writ was denied stating to exhaust my State Remedies. I subsequently filed (2) 440 Post Convictions which were denied. I was never given the evidence, Trial transcripts I requested. I was never given my Subpoena for Attorney Michael Warren as I requested. Judges  decisions made no reference to the Brady Material I presented.

16

So I had no grounds to Appeal the 440 Post Convictions as there was no record of the evidence I presented to the Court.

93. I then filed another Writ that 1st went to Judge Izzarry whom recused herself. My Writ then went to Judge Cogan whom denied it for not alleging any Constitutional claims. I was called by someone in the Court telling me that I should check what I filed and make sure it is the same as I filed with the Court.

94. Upon checking, indeed what I filed and was in the Court record was different. Judge Izzary had 46 pages of evidence removed. All the Constitutional violations I alleged was removed along with Trial transcripts, 911 report and my rapsheet. I immediately went to the Court and was told sometimes when the papers are scanned in pages are missed and it is a common occurrence.

95. I filed another Writ but it was denied because I was not in Custody.

96. So I have been stuck in Legal Limbo for 19yrs. My Due Process rights were being violated in New York State by Judges and the DA on my Post Conviction Motion, most recently 2013, by Judge Carroll whom directly said in his Motion that he will not overturn another Judges decision.

97. So until the Court of Appeals 2nd Circuit Decision stating that in this Circuit you do not have to 1st overturn your conviction to seek relief under USC 1983 as long as you are not in Custody, I was in Legal Limbo. *Marcos POVENTUD, Plaintiff–Appellant, v. CITY OF NEW YORK; Robert T. Johnson, in his official capacity as District Attorney for Bronx County; Frankie Rosado, Kenneth Umlauft, Christopher Dolan, and Daniel Toohey, individually and as members of the New York City Police Department, Defendants–Appellees.*

*Docket No. 12–1011–cv. Decided: April 19, 2013*

98. I was denied Without a Hearing in both 11047/90 and 4166/87 Post Conviction, CPL 440 Motions 3x. The 2nd Circuit ruled this is a denial of Due Process and a Unreasonable Determination. See Exhibit E page 39, Paragraphs 54 and 55.

Refusal of Access to Stenographer to purchase Trial Transcripts and witnesses removed from the Court Record

99. From 1991 to Present I have been requesting access to Court Stenographer Barbara Stroh to purchase trial transcripts. I ordered the Raw Stenographer Notes. They have refused to give me access to her. I tried Subpoenas in both State and Federal Courts. Motions to Compel etc. Since this is Court records I could not put in a FOIL request. Court records do not fall under FOIL. As the Stenographer at that time did not ever transcribe the requested Stenographer Notes I could not put a Motion in to for the Transcripts. So my only recourse is to somehow get access to the Court Stenographer Barbra Stroh and have her transcribe her Notes and I pay her for them. These Notes are Material as they will prove the following:

1. Judge Jackson told the Jury anytime a man and women have sex absent wedlock is the crime of rape in New York in his Jury Instruction.

2. Attorney Michael Warren told the DA when Stephanie name came up if you feel Mr. George committed a crime file a complaint Stephanie Stevenson Mother is in the Court right their next to Mrs. George file a complaint. We were all minors so needed Parents Consent for everything. I had to waive my Parents to speak to the Police and DA.

FACTS COMMON TO BOTH INDICTMENTS

100. Knowingly use of Material false testimony\evidence used in investigation phase seeking to find out if probable exist that I commit the crime in the Pre-arraignment phase and before the Grand Jury renders the Indictment Jurisdictional Defective and once discovered by the Prosecution they are preceding in excess of Jurisdiction and violating my

Due Process Rights, until defect is cured.

101.  Gun Lab Report not certified in according to Rodney J renders the Indictment a legal Nullity and the Prosecution is acting in excess of Jurisdiction and violating my Due Process Rights until the Indictment is corrected.

102.  Due Process Violation they suppress Material Brady Material from being entered into the Record.

103. Denied the right to purchase trial transcripts and denied subpoenas to prove elements of my complaint.

104.  Due Process Violation to deny me the right to lay a foundation to Offer to the Judge to put Material Brady Material into evidence. The denial of the right to offer putting Brady Material into evidence would leave a record that is reviewable of the evidence.

105.  Denial of Due Process to remove Material Brady Material from Court File and or Record.

106. Denial of Due Process for the Judge in its decision not to state what evidence or that you presented evidence to the Court in its decision.

107.  At pre-trial and trial in both cases, the only evidence presented by the Prosecution was Evidence they knew was false before my arrest because they had their Medical Examiner Report and on several occasions interviewed Theo Gordon and Julian Best before my arrest. They both testified at Trial.

108.  Plaintiff had been incarcerated for nearly two years since his arrest, including four years since his conviction.

109. The Evidence inculpated someone else in the case of the shooting (Indict 11047/90)

## BRADY MATERIAL SUPRESSED IN BOTH CASES

*We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland 373 U.S. 83*

110.  I was denied the right to offer to the Court Brady Material to put on record in my Post Conviction for Stephanie Stevenson my Rapsheet proving that I never was arrested not questioned for any crime. DA said there was no Medical Evidence. The law is clear that I cannot be charged with a crime absent an arrest. So I could not have been indicted. This is a direct Brady Violation. I made the request to use Brady Material when I filed my Post Conviction Motions to the Court and in Federal Court Writ. I filed the evidence as Exhibits in my Motions. I was never given a evidentiary hearing. Always denied without a hearing. With no mention of the evidence I filed with the Court, so I could not get any Appellate Review. Evidence\Facts not on the record in the lower Court cannot be 1st raised on Appeal.

(a) Since I was never arrested, there is no way I could have been arraigned and\or charged. EXHIBIT E at PARAGRAPH 46. Notwithstanding they Originally said I was Arrested to Federal Judge Sifton.

(b) Since I was not arrested why would Attorney Michael Warren file a Motion to Sever? He would lack Jurisdiction to, it would be premature.

(c) The fact that I was never arrested proves everything from the Severance Motion to a Judge Granting is a lie. The DA made the Documents up, and I stated this in my 440 as well as other things.

(d) They denied all of my Subpoenas to bring Attorney Michael Warren in Court because they knew they did. What Attorney would have me Plea to a Complaint I was never questioned or arrested for? That would be Malpractice.

(e) Suppressed everything stated in Paragraph 99 above

20

111.    I was denied the right to offer to the Court Brady Material to put on record in my Post Conviction for Camille Moreno the fact that Theo Gordon testified, Julian Best Testified and the DA Medical Examiner. They all testified that there was no force and in the case of Theo Gordon he testified that Camille was lying that he saved her from me. All evidence directly controverted all Camille's claims of rape and the ME was the DA's own witness. . I made the request to use Brady Material when I filed my Post Conviction Motions to the Court and in Federal Court Writ. I filed the evidence as Exhibits in my Motions. I was never given a evidentiary hearing. Always denied without a hearing. With no mention of the evidence I filed with the Court, so I could not get any Appellate Review. Evidence\Facts not on the record in the lower Court cannot be 1st raised on Appeal.

(a) The DA removed from the Court file as witness their Medical Examiner, Theo Gordon and Julian Best.

(b) Had I not purchased these Trial Minutes with the Exception of Julian Best which I did not purchase before the DA got to her *I would have absolutely no evidence to prove my claims against Camille Moreno.*

112.    I was denied the right to offer to the Court Brady Material to put on record in my Post Conviction for Camille Moreno the fact that the Evidence showed that Cammile testified in the Grand Jury that I beat her up and raped her and she fought me every step of the way. The DA had all of the evidence in paragraph 78 above before I was arrested. So they knew her testimony was False yet still brought it before the Court and Charged me. This was proven when Attorney Michael Warren was trying to Cross examine Camille on what she told the Grand Jury and she admitted and testified to the fact she never submitted and she fought me until the bitter end until Theo came and saved her. Never submission because of alleged threats of violence or gang rape. I made the request to use Brady Material when I filed my Post Conviction Motions to the Court and in Federal Court Writ. I filed the evidence as Exhibits in my Motions. I was never given a evidentiary hearing. Always denied without a hearing. With

21

no mention of the evidence I filed with the Court, so I could not get any Appellate Review.

Evidence\Facts no on the record in the lower Court cannot be 1st raised on Appeal.

113.    I was denied the right to offer to the Court evidence to put on record in my

Post Conviction for the Attempted Murder Indictment 11047/90 the 911 tape and record that would

have shown I did not match the description of any shooter nor was there any onscene Identification

any anyone of me as the shooter. Nor was I allowed to offer into evidence my Rapsheet that would

have shown at the time of the shooting I was in Police Custody.

(a) The denied me the right to offer to the Court to put into Evidence My Attorney Dovid
Klien Motion to dismiss and to inspect Grand Jury Minutes due to the fact I did not
match the description of any shooter and the 911 tape and Record proved this and the
fact there was never any On scene Id show-up, me being ID as the shooter by anyone
and the 911 report and 911 tape proved this as well

.(b) All Brady material spoken of herein for both case 11047/90 and 4166/87 I was served
on Defendants in All Federal Habeas Corpus and State Post Conviction Proceeding and
are still in my possession. They will be Provided again to this Court in Discovery Phase or
before when the Defendants Motion to Dismiss is filed and I answer.

## Conclusion

114.    As demonstrated above, the prosecution, at George's pre-trial and trial

for both cases indict 11047/90 and 4166/87, repeatedly presented false or misleading

testimony and made false or misleading statements to the court, the jury, and the

defense. Further, the prosecution withheld from the defense, at trial and for years

afterward, critical exculpatory and impeachment evidence, and denied me the right to

offer to the Court Brady Material consisting of the 911 tape and 911 Report, Rapsheet,

Gun Lab Report, Trial Minutes and The People's due process, Brady violations were

material to the outcome of the Charges, Grand Jury Hearing's, Pre-trial, Post

Conviction CPL 440's in Both Indictments 11047/90 and 4166/87 and therefore George's convictions must be vacated.

115.    The State Court's denial of George's motions to vacate his convictions under Indictment 11047/90 and 4166/87 without even a hearing was contrary to, and/or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and was based on an unreasonable determination of the facts in light of evidence presented in the State Court proceeding. *See* ' Bell v. Ercole, supra) (emphasis added) (quoting Amiel v. United States, 209 F.3d 195, 199-200 (2d Cir. 2000) (internal citation omitted)). Accord, Walker v. True, 399 F.3d 315, 327 (41 Cir. 2005).Case 1:08-cv-01359-DLI Document 11 Filed 09/11/08 Page 11of 19 PagelD #: 665 , in Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003),Taylor v. Maddox, 366 F.3d 992, 1001 (91 Cir. 2004) ("If ... a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts" [emphasis added].).Milke, et al v. Ryan, No. 07-99001 (9th Cir. 2013)

Signed this day of January, 20th, 2015, I declare under all penalties of Perjury that the foregoing is true and correct and known by my own direct knowledge, direct experience in dealing with these matters personally.

Submitted
1/21/15
P G

Patrick George
1426 East 98th street
Brooklyn, NY 11236
718-593-1070

23

# EXHIBIT A

802 N.Y.S.2d 605

Supreme Court, Bronx County, New
York.

The PEOPLE of the State of New York

v.

Marcos POVENTUD, Defendant.

Oct. 6, 2005.

Synopsis

Background: Defendant moved to vacate his judgment of conviction for attempted murder in the second degree and other related crimes.

Holdings: The Supreme Court, Bronx County, Alexander W. Hunter, J., held that:

1 *Brady/Rosario* violation occurred when prosecutor failed to turn over written statement by complainant wherein he identified defendant's brother in photo array, and

2 *Brady/Rosario* violation warranted new

trial. Motion granted.

Attorneys and Law Firms

**605 Jeremy Shockett, Assistant District Attorney, Attorney for Plaintiff.
**606 Julia Kuan, Esq., Attorney for

Defendant. Opinion

ALEXANDER W. HUNTER, J.

*338 Defendant moved to vacate his judgment of conviction for attempted murder in the second degree and other related crimes on the ground that his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961) were violated and on the ground that there is newly discovered evidence.

This court decided the motion with respect to newly discovered evidence in a decision dated March 28, 2005. With respect to that branch of the motion that involved a *Brady/Rosario* violation, this court held a hearing that was conducted over several days beginning on May 12, 2005 and concluding on June 15, 2005. The parties were permitted to submit post-hearing briefs and the defendant's reply brief was received by this court on September 16, 2005. In determining that branch of the motion which involved the *Brady/Rosario* violation, this court hereby incorporates all of the documents submitted by the defendant and the People prior to the hearing of this matter in addition to the evidence introduced at the hearing. At the hearing, the defendant called two witnesses: Edmund Byrnes, Esq., trial counsel for defendant Poventud and Douglas Lyons, Esq., trial counsel for co-defendant Robert Maldonado. The People called one witness, Sergeant Kenneth Umlauft.

The defendant and a co-defendant, Robert Maldonado, were convicted on April 29, 1998 of shooting Younis Duopo during a robbery of his livery cab. In May 2002, the Court of Appeals reversed the conviction of Robert Maldonado and remanded the case for a new trial. During the course of Maldonado's second trial, defendant Poventud claims that new evidence was introduced which demonstrated that the prosecution did not turn over evidence that was favorable to the defendant, thus resulting in a *Brady* violation. Specifically, on March 10, 1997, the complainant viewed a photo array presented by Sergeant Kenneth

802 N.Y.S.2d 605, 2005 N.Y. Slip Op. 25420

Umlauft, selected an identification card bearing the photograph of Francisco Poventud, the defendant's brother, initialed and dated it and -wrote on a separate piece of paper "looks a lot like him."[1]

There are several variations of the exact statement made by the complainant.

At the heart of defendant's motion is his assertion that he was not informed by the prosecution that the complainant had selected Francisco Poventud, the defendant's brother, as a person resembling one of his assailants, nor did the prosecution provide the defense with any documentation written by the *339 complainant regarding said identification procedure, thus resulting in a *Rosario* violation. The piece of paper where the complainant wrote " looks a lot like him," was never turned over and has never been located though Sgt. Umlauft testified that it was placed in the case folder.

This court credits the testimony of defense counsel Edmund Byrnes and defense counsel Douglas Lyons. Defendant's trial counsel, Edmund Byrnes, testified at the hearing that he was never informed by the District Attorney's office of the identification proceeding involving defendant Poventud's brother Francisco nor was the paper where he wrote "looks a lot like him" ever turned over to him. He testified at length as to how he would have used that identification procedure at the trial if he had been informed of it. The People allege that during the trial, Sgt. Umlauft had an off- **607 the-record conversation with both Mr. Byrnes and co-counsel Douglas Lyons, wherein Sgt. Umlauft informed both attorneys as to this identification procedure involving defendant Poventud's brother. Douglas Lyons, Esq., testified that he did not recall having an off-the-record conversation with Sgt. Umlauft which involved the identification procedure at issue. Both attorneys testified that there would be no strategic or tactical reason not to use that misidentification procedure at the trial when identification of the defendants played such a major role.

Sgt. Umlauft's testimony was that he conducted the identification procedure at the hospital while the complainant was "awake" and "alert" but not able to speak. In addition, Sgt. Umlauft testified that the complainant did not have his glasses on but he looked at the photo array and wrote on a pad, "looks like him." Sgt. Umlauft had the complainant sign by the photo where he wrote that statement and testified that he had a conversation with the assigned Assistant District Attorney, Greg Turkin, about the identification proceeding. He further testified that AD.A. Turkin told him to speak to the two defense attorneys at a recess during the trial about the identification proceeding and he did so in the rear of the courtroom.

1 Under *People v. Vilardi*, 76 N.Y.2d 67, 556 N.Y.S.2d 518, 555 N.E.2d 915 (1990), the standard to be used to determine whether or not a defendant is entitled to a new trial based upon the prosecution's failure to disclose exculpatory material, which has been requested, is a "reasonable possibility" that the failure to disclose the exculpatory evidence contributed to the verdict. Moreover, C.P.L. § 240.45(l)(a), states that, *340 "After the jury has been sworn and before the prosecutor's opening address ... the prosecutor shall, subject to a protective order, make available to the defendant: (a) Any written or recorded statement ... made by a person whom the prosecutor intended to call as a witness at trial, and which relates to the subject matter of the witness's testimony." The prosecutor failed to turn over the written statement by the complainant wherein he identified defendant Poventud's brother, therefore, there was a violation under *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961).

The numerous documents and transcripts submitted by the defendant in his motion demonstrate that the jury struggled with the issue of identification. In one of the jury's notes, a copy of which was attached to defendant's motion as Exhibit C, the jury requested to hear the testimony of the complainant regarding one of the photo arrays, they wanted to view

the two photo arrays entered into evidence, they wanted to see defendant Poventud's identification cards from his wallet, and, more importantly, they wanted to hear testimony regarding "negative results." (See, Juror Note No. 3, Defendant's Exhibit C). Moreover, the jury sent a note to the court during deliberations, indicating that they were "hopelessly deadlocked." (See Juror Note # 6, Defendant's Exhibit 6).

In a case such as this one where the conviction depended on the identification by the complainant of the defendants, an identification of an individual other than the defendants on trial for the robbery is of great magnitude. The People, in their brief submitted August 26, 2005, assert that the misidentification and written statement made by the complainant is not *Brady* material and that there is no reasonable possibility that the material would have contributed to the verdict because the complainant was not wearing his glasses at the time of the misidentification, was medicated, **608 and he was "not completely coherent." (People's Brief, p. 1-2).

2  Those factors listed by the People are for the jury to weigh and determine what significance, if any, to place upon them. The fact is that there was an identification procedure performed whereby the complainant identified an individual other than the defendants on trial as committing the robbery. The question of whether defendant Poventud and his brother facially look similar or not in appearance especially in light of the fact that *341 defendant's brother was incarcerated at the time of the robbery of Mr. Duopo is a crucial issue for the jury to consider. Whether or not material should be considered exculpatory and turned over to the defendant is not subject to question. This material was required by law to be turned over to the defense. What the defense and jury does with it is totally within their respective province of advancing a criminal defense and as fact finders.

Furthermore, whether or not the identification made by the complainant of the defendant's brother was a "tentative identification" as the People allege is not a factor in determining whether material is *Brady* material or not. Any identification procedure or misidentification procedure made by a complainant should be turned over to a defendant who stands accused of the crime regardless of the importance that the District Attorney's office may or may not place on it. The obligation to turn over such *Brady* material rests squarely on the shoulders of the prosecutor and in this instance, the prosecutor failed in his obligation.

Moreover, glaringly absent from the hearing was testimony from the assigned Assistant District Attorney, Greg Turkin, though he was available to testify as to his version of the events. The People assert that Assistant District Attorney Greg Turkin directed the defense attorneys to speak with Sgt. Umlauft regarding the photo array in question. However, as the defendant correctly asserts, the prosecutor had an affirmative duty to inform defense counsel about the identification procedure and defense counsel should not have to go on a "fishing expedition" to obtain said material.

This court finds that the defendant met his burden by a preponderance of the evidence that *Brady/Rosario* material was not disclosed and that there is a reasonable possibility that the material in question could have affected the outcome of the trial.

Accordingly, the defendant's conviction is hereby vacated and a new trial is hereby ordered which shall be preceded by a *Wade* hearing.

This shall constitute the decision and order of this Court.

Parallel Citations

lO Misc.3d 337, 2005 N.Y. Slip Op. 25420

<u>Exhibit B</u>

1.    *People v. Moss,* 176 A.D.2d 826 (2d Dept. 1991): conviction reversed for police officer's
      loss and/or destruction of contemporaneous description of the defendant.

2.    *People v. Nikollaj,* 155 Misc.2d 642 (Sup. Ct. Bronx County 1992): New trial ordered
      for *Rosario* violations where police failed to turn over numerous inconsistent
      statements of complainant officers. Court also criticized police for placing defendant in a
      lineup consisting of Bronx police officers as fillers, despite fact that complainants
      were also Bronx police officers.

3.    *People v. Clausell,* 182 A.D.2d 132 (2d Dept. . 1992): Police failed to disclose buy
      report with description of suspect that was inconsistent with officer's testimony. New
      trial ordered for *Brady* violation.

4.    *People v. Johnson,* 81 N.Y.2d 828 (1993): Conviction reversed where court found
      improper the show-up identification of defendant by robbery victim conducted hours after
      the crime, where both the defendant and the complainant were transported to the crime
      scene.

5.    *People v. Rojas,* 213 A.D.2d 56 (1st Dept. 1994): Conviction reversed
      where identification procedure was improper and prejudicial.

6.    *People v. Brogdon,* 213 A.D.2d 418 (2d Dept. 1995): Conviction reversed where notes
      made by NYPD sergeant were withheld from defendant, and where identification by
      undercover "cannot be said as a matter of law" to have been "merely confirmatory
      and not suggestive."

7.    *People v. White,*232 A.D.2d 436 (2d Dept. 1996): Conviction reversed due to loss of
      police officer's memo book through lack of due care, where there was a serious
      identification issue, and defendant was prejudiced by his inability to cross-examine
      officer using missing memo

Exhibit C

1.   *People v. Cortez,* 149 Misc.2d 886 (Sup. Ct. Kings Co. 1990): Police violated "spirit" of *Brady* by intentionally destroying a tape they were ordered by the court to preserve. The court found that the D.A.'s office shared responsibility and the indictment was dismissed.

2.   *People v. Moss,* 176 A.D.2d 826 (2d Dept. 1991): Conviction reversed for police officer's loss and/or destruction of contemporaneous description of the defendant.

3.   *People v. Clausell,* 182 A.D.2d 132 (2d Dept. 1992): Police failed to disclose buy report with description of suspect that was inconsistent with officer's testimony. New trial ordered for *Brady* violation.

4.   *People v. Nikollaj,* 155 Misc.2d 642 (Sup. Ct. Bronx County 1992): New trial ordered for *Rosario* violations where police failed to turn over numerous inconsistent statements of complainant officers. Court also criticized police for placing defendant in a lineup consisting of Bronx police officers as fillers, despite fact that complainants were also Bronx police officers.

5.   *People v. Dunn,* 185 A.D.2d 54 (15[1] Dept. 1993): Conviction reversed in part where, among other things, police detective destroyed interview notes.

6.   *People v. Morrow,* 204 A.D.2d 356 (2d Dept. 1994): Conviction reversed where a significant portion of police report was not disclosed.

7.   *People v. White,* 200 A.D.2d 351 (15[1] Dept. 1994): Conviction reversed where DDS containing *Brady* and *Rosario* material was not disclosed, and only was discovered through defendant's post-conviction FOIL request to the NYPD and Bronx DA's Office.

8.   *People v. Anderson,* 222 A.D.2d 442 (2d Dept. 1995): Conviction reversed where scratch notes lost or destroyed due to officer's "lack of due care."

9.   *People v. Brogdon,* 213 A.D.2d 418 (2d Dept. 1995): Conviction reversed where notes made by NYPD sergeant were withheld from defendant, and where identification by undercover "cannot be said as a matter of law" to have been "merely confirmatory and not suggestive."

10.  *People v. Joseph,* 86 N.Y.2d 565 (1995): Adverse inference instruction appropriate where police deliberately destroyed interview notes.

11.  *People v. White,* 232 A.D.2d 436 (2d Dept. 1996): Conviction reversed due to loss of police officer's memo book through lack of due care, where there was a serious identification issue, and defendant was prejudiced by his inability to cross-examine officer using missing memo book.

12.    *People v. Gallman,* 240 A.D.2d 512 (2d Dept. 1997): Conviction reversed for failure to disclose notes of police interview with a key witness; officer's typewritten notes were not duplicative equivalent because they contained "variations" .

13.    *People v. Jackson,* 237 A.D.2d 179 (1st Dept. 1997): Conviction reversed for *Brady* violation consisting of the withholding by the police of internal affairs reports that contained entries that significantly were at variance with prosecution's evidence at trial and were favorable to defendant.

14.    *People v. Okafor,* N.Y.L.J. 9/8/89 at p. 21: *Rosario* and *Brady* violations found and conviction reversed where prosecutor withheld potentially exculpatory witness statements in a child sex abuse case.

15.    *People v. Olmo,* 153 A.D.2d 544 (ls¹ Dept. 1989): New *Wade* hearing ordered where it was discovered that key witness gave perjured testimony and the prosecutor may have known about it.

Exhibit D

1.   *Hart v. City of New York,* 186 A.D.2d 398 (15[1]Dept. 1992): Damage award upheld against police officers who gave false grand jury and trial testimony.

2.   *Tong v. City of New York, et al.,* 95-cv-7965 [S.D.N.Y., settled 10/4/95, $35,000]: Plaintiff arrested for traffic violation, which was later dismissed. Complaint alleged *Monell* theory of liability based on the City's deliberate indifference to constitutional obligations of the NYPD, failure to train and supervise police officers, and negligent hiring of officers, which caused violations of plaintiff's constitutional rights.

3.   *Dabbah v. City of New York, et al.,* 95-cv-2952 [S.D.N.Y., settled 3/12/96, $35,000]: Plaintiff arrested without probable cause on disorderly conduct charges; charges dismissed on People's motion 8 months after arrest.

4.   *Boland v, City of New York, et al.,* 93-cv-5058 [E.D.N.Y., settled 8/6/96, $30,000]: Plaintiff arrested without probable cause; held in custody for two nights.

5.   *Kadlub v. City of New York, et al.,* 95-cv-1080 [E.D.N.Y., settled 12/11/96, $34,000]: Plaintiff arrested without probable cause on drug possession and sale charges. Complaint alleged *Monell* theory of liability based on the City's deliberate indifference to constitutional obligations of the NYPD, failure to train police officers, and negligent hiring of officers, which caused violations of plaintiff's constitutional rights.

6.   *Castro v. City of New York, et al.,* 94-cv-5114 [S.D.N.Y., settled 3/18/97, $72,500]: Plaintiff arrested on weapons possession charges without probable cause; charges dropped after plaintiff was held in custody for several hours. Complaint alleged that NYPD officer responded to plaintiff's complaints about wrongful arrest by saying that he would not release her, but if the arrest were in error she could "always sue the City, [because] they got a lot of money."

7.   *McCaskill v. City of New York, et al.,* 96-cv-3687 [E.D.N.Y., settled 7/10/97, $100,000]: Plaintiff arrested for disorderly conduct without probable cause; charges pending for approximately 6 months before dismissal by the court.

8.   *Gurley v. City of New York, et al.,* 95-cv-2422 [E.D.N.Y., settled 8/21/97, $1,7500,000]: Conviction obtained in 1972 was vacated over 20 years later based on prosecutor's withholding of exculpatory evidence, including an NYPD ballistics report. Complaint alleged that NYPD had longstanding policy of deliberate indifference to the constitutional requirement that exculpatory evidence be preserved and disclosed to defendants.

9.   *Gaylock v. City of New York, et al.,* 96-cv-6183 [E.D.N.Y., settled 3/6/98, $90,000]: Plaintiffs arrested without probable cause on weapons charges, which were pending for 10 months before dismissal by court. Complaint alleged *MonellAskins* theory of

30

liability based on the City's failure to train police officers, and negligent hiring of officers, which caused violations of plaintiff's constitutional rights.

10. *Gordon* v. *City of New York, et al.,* 97-cv-8035 [S.D.N.Y., settled 11/12/98, $40,000]: Plaintiff arrested without probable cause based on false allegations in felony complaint made by NYPD officers; charges dismissed by prosecutor 3 months after arrest.

11. *Perez* v. *City of New York, et al.,* 98-cv-2331 [S.D.NY., settled 1/16/99, $15,000]: Plaintiff arrested without probable cause; charges dismissed by court approximately 6 months after arrest.

12. *Ziehenni* v. *City of New York, et al.,* 98-cv-3763 [S.D.N.Y., settled 3/5/99, $55,000]: Plaintiff arrested without probable cause; charges pending for 2 *Yi* months before they were dismissed by the court. Complaint alleged arrest was made in retaliation for plaintiff's prior CCRB complaint.

13. *Deluise* v. *City of New York, et al.,* 98-cv-2551 [S.D.N.Y., settled 3/18/99, $28,500]: Plaintiff arrested without probable cause.

14. *Napoli* v. *City of New York, et al.,* 97-cv-1255 [E.D.N.Y., settled 4/9/99, $60,000]: Plaintiff arrested on weapons possession and assault charges based on false testimony by NYPD officers in grand jury. Plaintiff acquitted approximately one year after arrest. Complaint alleged *Monell* theory of liability based on the City's deliberate indifference to constitutional obligations of the NYPD, failure to train and supervise police officers, and negligent hiring of officers, which caused violations of plaintiff's constitutional rights.

15. *Jefferson* v. *City of New York, et al.,* 98-cv-1097 [E.D.N.Y., settled 4/14/99, $175,000]: Plaintiff corrections officer arrested on drug charges without probable cause; charges pending for 5 months before grand jury returned no true bill. Complaint alleged that NYPD officers failed to inform prosecutors of their knowledge of plaintiff's innocence during the prosecution.

16. *Denizard* v. *City of New York, et al.,* 98-cv-423 [E.D.N.Y., settled 6/4/99, $64,000]: Plaintiff arrested without probable cause for disorderly conduct, resisting arrest. Charges dismissed on People's motion eight months after arrest.

17. *Sweazie* v. *City of New York, et al.,* 99-cv-419 [E.D.N.Y., settled 10/20/99, $20,000]: Plaintiff arrested on weapons possession charges; prosecution continued based on NYPD officers' false statements in felony complaint. Charges dismissed when grand jury voted no true bill. Complaint alleged *Monell* theory of liability based on the City's deliberate indifference to constitutional obligations of the NYPD, failure to train police officers, and negligent hiring of officers, which caused violations of plaintiff's constitutional rights; also alleged NYPD's institutional failure to follow up on civilian complaints made to JAB and CCRB

18.   *Daniels v. City of New York, et al.,* 00-cv-1981 (S.D.N.Y., settled 3/15/00, $28,500):
      Plaintiff arrested without probable cause on weapons charges; charges dismissed by the
      court 8 months after arrest.

19.   *Almonte v. City of New York, et al.,* 99-cv-519 [E.D.N.Y., settled 7/12/00, $30,000]:
      Plaintiff arrested on drug sale charges without probable cause; indictment dismissed by
      the court 1 year, 9 months after arrest. Complaint alleged *Monell* theory of liability based
      on the City's deliberate indifference to constitutional rights, failure to train police officers,
      and negligent hiring of officers, which caused plaintiff's malicious prosecution and
      unlawful arrest.

20.   *Fields v. City of New York, et al.,* 99-cv-8130 [E.D.N.Y., settled 7/28/00, $15,000]:
      Plaintiff arrested without probable cause; prosecution continued for four months before
      dismissal by court. Complaint alleged *Monell* theory of liability based on the City's failure
      to train police officers, and negligent hiring of officers, which caused violations of
      plaintiff's constitutional rights.

21.   *Younger v. City of New York, et al.,* OO-cv-836 [S.D.N.Y., settled 9/1/00, $25,000]:
      Plaintiff arrested without probable cause; complaint alleged that arrest was made in
      retaliation for plaintiff's complaint to JAB.

22.   *Lovell v. City of New York, et al.,* 00-cv-0002 [S.D.N.Y., settled 10/20/00, $40,000]:
      Plaintiff arrested without probable cause for turnstile jumping based on false statements
      made by NYPD officer in criminal complaint. Complaint alleged *Monell* theory of
      liability based on the City's deliberate indifference to constitutional obligations of the
      NYPD, failure to train police officers, and negligent hiring of officers, which caused
      violations of plaintiff's constitutional rights; also alleged NYPD's institutional failure to
      follow up on civilian complaints made to JAB and CCRB.

23.   *Cotto v. City of New York, et al.,* 00-cv-1341 [E.D.N.Y., settled 12/01/00, $30,000]:
      Plaintiff arrested without probable cause; charges pending for one month before dismissal
      by the court.

24.   *Coleman v. City of New York, et al.,* OO-cv-2019 [E.D.N.Y., settled 1/2/01, $60,000]:
      Two plaintiffs arrested without probable cause.

25.   *Crespo v. City of New York, et al.,* 93-cv-8847 [S.D.N.Y., settled 8/29/06, $25,000]:
      Plaintiff arrested without probable cause on weapons possession charges. Complaint
      alleged *Monell* claim based on the NYPD's "foster[ing of] a policy to which perjury and
      the falsification of documents were methods of securing indictments and convictions of
      innocent individuals."

Exhibit E

1.    *People v. Castro,* 147 A.D.2d 410 (1st Dept. 1989): Hearing on § 440.10 motion ordered where co-defendant, unbeknownst to defendant at trial, provided information to prosecution.

2.    *People v. Okafor,* N.Y.L.J. 9/8/89 at p. 21: *Rosario* and *Brady* violations found and conviction reversed where prosecutor withheld potentially exculpatory witness statements in a child sex abuse case.

3.    *People v. Olmo,* 153 A.D.2d 544 (ls¹ Dept. 1989): New *Wade* hearing ordered where it was discovered that key witness gave perjured testimony and the prosecutor may have known about it.

4.    *People v. Roman,* 150 A.D.2d 252 (1st Dept. 1989): Conviction reversed where prosecutor's improprieties on summation included, among other things, his attempt to give legal instruction to the jury, and his improper vouching for his own witnesses.

5.    *People v. Negron,* 161 A.D.2d 537 (l5¹ Dept. 1990): Conviction reversed where, among other things, prosecutor delivered a misleading summation accusing defendant and his counsel of fabricating theory of defense.

6.    *People v. World,* 157 A.D.2d 567 (1st Dept. 1990): Conviction reversed where prosecutor denigrated defense theory of self defense, accused defendant of lying and tailoring his testimony to appear less culpable, suggested that defendant was not entitled to fair trial, and improperly vouched for credibility of eyewitness.

7.    *People v. Jorge,* 171 A.D.2d 498 (l5¹ Dept. 1991): Conviction reversed for improper summation based on prosecutor's inflammatory comments.

8.    *People v. McReynolds,* 175 A.D.2d 31 (1st Dept. 1991): Conviction reversed based for prosecutor's improper impugning of defense counsel's integrity.

9.    *People v. Butler,* 185 A.D.2d 141 (1st Dept. 1992): Conviction reversed where prosecutor's summation was found to violate the Code of Professional Responsibility.

10.   *People v. Hernandez,* 185 A.D.2d 147 (15t Dept. 1992): Conviction affirmed, but prosecutor admonished regarding his summation and directed to receive training in order to refrain from future improper conduct.

11.   *People v. Lewis,* 174 A.D.2d 294 (1st Dept. 1992): Conviction reversed where prosecutor failed to disclose deal made with different prosecutor in another city; misled the jury that no promises were made.

12. *People* v. *Mudd,* 184 A.D.2d 388 (1s'Dept. 1992): Conviction reversed for numerous reasons, including the prosecutor's summation which was "directly contrary to the evidence."

13. *People* v. *Shears,* 184 A.D.2d 357 (1st Dept. 1992): Conviction affirmed where prosecutor improperly characterized defendant as a "magician," and improperly impugned defense witness's motives.

14. *People* v. *Banfield,* 194 A.D.2d 330 (1$^{51}$ Dept. 1993), and *People* v. *Byfield,* 194 A.D.2d 331 (1st Dept. 1993): Convictions reversed where prosecutor promised witness "favorable disposition" of witness's case, but did not disclose that to defendants.

15. *People* v. *Slaughter,* 189 A.D.2d 157 (1st Dept. 1993): Conviction reversed where, among other things, prosecutor improperly vouched for witnesses during summation.

16. *People* v. *White,* 200 A.D.2d 351 (1st Dept. 1994): Conviction reversed where DDS of eyewitness contradicting witness's trial testimony was withheld by prosecutor. The Court found that the People violated both *Brady* and *Rosario.*

17. *People* v. *Ramos,* 201 A.D.2d 78 (1$^5$'Dept. 1994): Conviction reversed for prosecution's failure to turn over *Brady* material related to credibility of complaining witness in child abuse case.

18. *People* v. *Rutter,* 202 A.D.2d 123 (1st Dept. 1994), and *People v. Bowen,* 234 A.D.2d 161 (1$^5$'Dept. 1996): Convictions reversed because, among other things, the prosecutor failed to disclose a transcript of a polygraph exam performed on the People's main witness containing both exculpatory and impeachment material.

19. *People* v. *Johnson,* 212 A.D.2d 362 (1st Dept. 1995): Conviction affirmed, but court found summation "improper," as the prosecutor's comments were "misleading."

20. *People* v. *Williams,* 212 A.D.2d 388 (Pt Dept. 1995): Conviction reversed where prosecutor repeatedly ignored trial judge's rulings as to scope of questioning and argued on summation that defendant was guilty of other uncharged crimes.

21. *People* v. *Lantigua,* 228 A.D.2d 213 (1st Dept. 1996): Conviction reversed where prosecutor failed to disclose that eyewitness was with another person when she allegedly saw the crime.

22. *People* v. *Collins,* 173 Misc.2d 350 (Sup. Ct. Bronx Co. 1997): Conviction set aside for prosecutor's failure to disclose complainant's history of mental illness and substance

23. *People* v. *King,* 241 A.D.2d 329 (1st Dept. 1997): Conviction reversed where prosecutor delayed turning over *Rosario* material.

24.  *People v. Mikel,* 710 N.Y.S.2d 70 (1st Dept. 1997): Conviction reversed where prosecutor failed to disclose that witness violated his cooperation agreement prior to trial by fleeing to Puerto Rico, and when he was returned, entered into a new cooperation agreement to cover the numerous felony charges stemming from his flight.

25.  *People v. Ortega,* 241 A.D.2d 369 (1st Dept. 1997): Conviction reversed where, among other things, prosecutor failed to disclose the transcript of eyewitness's Grand Jury rebuttal testimony until its existence was discovered mid-trial.

26.  *People v. Olivero,* 272 A.D.2d 174 (1st Dept. 2000): Conviction reversed where, among other things, prosecutor "mischaracterized" evidence on summation.

27.  *Morales v. Portuondo,* 165 F. Supp.2d 601 (S.D.N.Y. 2001): Convictions of two defendants unconditionally discharged based on prosecutor's failure to disclose key exculpatory evidence pointing to another perpetrator.

28.  *Mendez v. Artuz,* 303 F.3d 411 (2d Cir. 2002): Suppression of favorable, material evidence, that third party in custody in another jurisdiction had confessed to hiring hit man to kill shooting victim, was a *Brady* violation that required relief.

29.  *Flores v. Demskie,* 215 F.3d 293 (2d Cir. 2002): On the last day of trial prosecution disclosed that an additional memo book from one of the police witnesses had not been turned over and was lost.

30.  *People v. Johnson,* 191 Misc.2d 105 (Sup. Ct. Bronx Co. 2002): Conviction set aside for *Brady* and *Rosario* violations.

31.  *People v. Bruno,* Ind. No. 0027/97, N.Y.L.J., 4/23/03 at p. 19: Conviction reversed where prosecutor withheld information casting doubt on the voluntariness of a confession.

32.  *People v. LaPorte,* 306 A.D.2d 93 (1st Dept. 2003) Conviction reversed where prosecutor impugned defense counsel's integrity and ridiculed the defense.

33.  *People v. Spruill,* 5 A.D.3d 318 (l5t Dept. 2004): Conviction reversed where prosecutor's summation comments improperly inflamed jury's emotions.

34.  *People v. Woods,* 9 A.D.2d 293 (1st Dept. 2004): Conviction reversed for *Crawford* errors at trial and also because prosecutor met with key witness alone in her office, and that witness could have viewed confidential records related to the trial.

35.  *People v. Aquilar,* 14 Misc.3d 1 (Sup. Ct. Bronx Co. 2006): Conviction reversed where prosecutor's comments on summation "exceeded the bounds of legitimate advocacy."

Lack of Jurisdiction, Material false statements used in Grand Jury Survive guilty plea

36.    Courts have dismissed in these circumstances even though there was sufficient other reliable evidence presented, or the prosecutor acquired the knowledge of the false evidence after the indictment was handed up, or the prosecutor made a full disclosure of the falsity after discovering it (United States v Basurto, supra; cf. People v Leary, 305 N.Y. 793). Indeed, courts have stated that indictments may be dismissed solely because they were obtained by the prosecutor for improper motives (see, e.g., United States v DeMarco, 401 F.Supp. 505, affd 550 F.2d 1224; People v Tyler, 46 N.Y.2d 251; Matter of Cunningham v Nadjari, 39 N.Y.2d 314, 318).PEOPLE v. PELCHAT, 62 N.Y.2d 97 (1984)

37. By pleading, defendant has elected a trial strategy. He has determined, for whatever reason, that he will not litigate the question of guilt. Having made that bargain he necessarily surrenders certain rights including the right to challenge the factual basis for the plea (see People v Foster, 19 N.Y.2d 150, 151; People v Griffin, 7 N.Y.2d 511, 515). He does not, however, forfeit all right to challenge the court's jurisdiction (People v Harper, 37 N.Y.2d 96; People v Koffroth, 2 N.Y.2d 807; People v Miles, 289 N.Y. 360) or raise arguments of a constitutional dimension (see People v Lee, 58 N.Y.2d 491 [constitutionality of statute]; People v Blakley, 34 N.Y.2d 311 [speedy trial rulings]; People v Francabandera, 33 N.Y.2d 429 [defendant's competence to stand trial]; People v Lynn, 28 N.Y.2d 196, supra [right to be informed of right to appeal]; see, also, Pitler, NY Crim Prac Under the CPL, § 9.11, pp 453-454; cf. Boykin v Alabama, 395 U.S. 238). Falling into the same category is a challenge based upon a guilty plea to an accusatory instrument which is void because of the prosecutor's knowledge that the only evidence to support it is false (see People v Peetz, 7 N.Y.2d 147; People v Koffroth, supra; People v Sexton, 187 N.Y. 495, 511, supra).PEOPLE v. PELCHAT, 62 N.Y.2d 97 (1984)

38. When a conviction is obtained by the presentation of testimony known to the prosecuting authorities to have been perjured, due process is violated. The clause "cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance . . . is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. Mooney v. Holahan, 294 U.S. 103, 112

39. Alcorta v. Texas (U.S. 1957): Due process violated by prosecution's "passive" use of perjured testimony.

40. Napue v. Illinois (U.S. 1959): Held that "the failure of the prosecutor to correct the testimony of the witness which he knew to be false denied petitioner due process of law in violation of the Fourteenth Amendment."

41. Banks v. Dretke (U.S. 2004): Misconduct in capital murder case because prosecution withheld information that would have discredited two prosecution witnesses, including one who was a paid I police informant and the other had coached by prosecution before testifying.

42. The Court has long held it would set aside under the due process clause convictions that are supported by no evidence at all,Thompson v. City of Louisville, 362 U.S. 199 (1960); Garner v. Louisiana, 368 U.S. 157 (1961); Taylor v. Louisiana, 370 U.S. 154 (1962); Barr v. City of Columbia,

378 U.S. 146 (1964); Johnson v. Florida, 391 U.S. 596 (1968). See also Chessman v. Teets, 354 U.S. 156 (1957).

Cannot use uncorroborated testimony to corroborate another uncorroborated testimony to find

Probable Cause.

43. Cannot use unverified testimony of an Accuser to verify the unverified testimony of another Accuser for finding Probable Cause that a crime was committed. Wong Su v. United States, 371 US 471

44. if the information imparted "constitutes [no] more than unsubstantiated rumor, unfounded accusation or conclusory characterization," it will not meet the Aguilar-Spinelli test even if supplied by a reliable informant (People v Ketcham, 93 NY2d at 420).[FN2] Moreover, while the "fellow officer rule" permits an arresting officer to act at the direction of another officer "provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest" (People v Ramirez-Portoreal, 88 NY2d 99, 113 [1996] [internal quotation marks and citation omitted]), probable cause is not established by "unsubstantiated hearsay communication—even when transmitted by a fellow officer" (People v Ketcham, 93 NY2d at 420).

45. "Probable cause is established absent materially impeaching circumstances, where, as here, the victim of an offense communicates to the arresting officer information affording a credible ground for believing the offense was committed and identifies the accused as the perpetrator" (People v Gonzalez, 138 A.D.2d 622, 623 [2d Dept 1988] [emphasis added], lv denied 71 N.Y.2d 1027 [1988]). The question is whether the police are aware of "materially impeaching circumstances" or grounds for questioning the complainant's credibility.

46. The court found no qualified immunity and no probable cause where officers arrested the plaintiff for rape based on unreliable canine identification, suggestive eyewitness identification procedures, and mere resemblance to a general description of the attacker. Grant v. City of Long Beach, 315 F.3d 1081 (9th Cir. 2002); United States v. Prescott, 581 F.2d 1343, 1351 (9th Cir. 1978)

47. Young v. Conway, 698 F.3d 69, 88-89 (2d Cir. 2012) (collecting studies regarding the unreliability of eyewitness testimony), cert. denied, 134 S. Ct. 20 (2013); see generally State v. Henderson, 208 N.J. 208 (2011) (reviewing various social science research, laboratory experiments, and scientific evidence demonstrating that "an array of variables can affect and dilute memory and lead to misidentifications").

48. People v. Wise, 752 N.Y.S.2d 837, 850 (N.Y. Sup. Ct. N.Y. County 2002) (vacating convictions of Central Park Five); see generally Steven A Drizin & Richard A. Leo, The Problem of False Confessions in the Post-DNA World, 82 N.C. L. Rev. 891 (2004) (analyzing 125 cases in which "indisputably innocent individuals confessed to crimes they did not commit").

Must be arrested and refingerprinted if Indicted in Secret

49. CPL  210.10 (3) If the defendant has not previously been held by a local criminal court for the action of the grand jury and the filing of the indictment constituted the commencement of the criminal action, the superior court must order the indictment to be filed as a sealed instrument until the defendant is produced or appears for arraignment, and **must issue a superior court warrant of arrest**. Upon the request of the district attorney, in lieu of a superior court warrant of arrest, the court may issue a summons if it is satisfied that the defendant will respond thereto. Upon the request of the district attorney, in lieu of a warrant of arrest or summons, the court may instead authorize the district attorney to direct the defendant to appear for arraignment on a designated date if it is satisfied that the defendant will so appear. A superior court warrant of arrest is executable anywhere in the state. Such warrant may be addressed to any police officer whose geographical area of employment embraces either the place where the offense charged was allegedly committed or the locality of the court by which the warrant is issued. **It must be executed in the same manner as an ordinary warrant of arrest, as provided in section 120.80, and following the arrest the executing police officer must without unnecessary delay perform all recording, fingerprinting, photographing and other preliminary police duties required in the particular case, and bring the defendant before the superior court.** If such superior court is not available, the executing police officer may bring the defendant to the local correctional facility of the county in which such superior court sits, to be detained there until not later than the commencement of the next session of such court occurring on the next business day

Additional Brady Law

50. Brady does not require actual innocence, and even "'[a] guilty man is entitled to a fair trial.'"People v. Buchalter, 289 N.Y. 181, 225 (1942) (Lehman, Chief Judge, concurring)

51. "While Brady ensures a fair trial, a defendant's right to pre-trial disclosure under Brady is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed," much less that he is in fact innocent. Osborne v. Dist. Att'y's Office for Third Jud. Dist., 521 F.3d 1118, 1132 (9th Cir. 2008), rev'd on other grounds, 557 U.S. 52 (2009). The remedy for a Brady claim is therefore a new trial, as proof of the constitutional violation need not be at odds with his guilt. See, e.g., United States v. Sipe, 388 F.3d 471, 493 (5th Cir. 2004).

52. The Court has long held it would set aside under the due process clause convictions that are supported by no evidence at all, Thompson v. City of Louisville, 362 U.S. 199 (1960); Garner v. Louisiana, 368 U.S. 157 (1961); Taylor v. Louisiana, 370 U.S. 154 (1962); Barr v. City of Columbia, 378 U.S. 146 (1964); Johnson v. Florida, 391 U.S. 596 (1968). See also Chessman v. Teets, 354 U.S. 156 (1957).

53. A prosecutor also does not have absolute immunity "for acts that are manifestly or palpably beyond his authority" or are "performed in the clear absence of all jurisdiction." Schloss v. Bouse, 876 F.2d 287, 291 (2d Cir. 1989)

When State Court makes determination of Post Conviction 440 without a hearing is a

## UNREASONABLE DETERMINATION

54. Liebman, Federal Habeas Corpus Practice and Procedure §20.2(b) at 907-08 n. 22 (51ed.2005)). "Under those circumstances," Judge Korman reasoned, it is proper to apply the pre- AEDPA rule that, "'[w]here a habeas petitioner alleges facts that, if proven, would entitle him to relief, a federal court must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in the state court.'" Bell v. Ercole, supra) (emphasis added) (quoting Amiel v. United States, 209 F.3d 195, 199-200 (2d Cir. 2000) (internal citation omitted)). Accord, Walker v. True, 399 F.3d 315, 327 (41 Cir. 2005).Case 1:08-cv-01359-DLI Document 11 Filed 09/11/08 Page 11of 19 PageID #: 665 All of the other cases we cited in our previous memorandum at page 6, including the Second Circuit's decision in Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003), reach the same conclusion: there can be no deference to a state court's application of law to "facts" where it "did not permit the development of the factual record." Id. See Taylor v. Maddox, 366 F.3d 992, 1001 (91 Cir. 2004) ("If ... a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts" [emphasis added].).

55. We have held that, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." Milke, et al v. Ryan, No. 07-99001 (9th Cir. 2013)

## Municipality 50-H Hearing Law

56. The municipality or municipal agency has 90 days from receiving the Notice of Claim to conduct a 50-h hearing. **If the Municipal Agency demands a Statutory Hearing, you must appear. You cannot begin a lawsuit until after appearing at the Statutory Hearing.** If the municipality or agency does not demand a hearing within 30 days of filing the Notice of Claim, you have the right to commence the lawsuit immediately although you may have to appear for the hearing after filing suit.

# Defendants Rider

The City of New York
100 Church St
New York, NY 10007

---

All Defendants listed below

360 Jay Street
Brooklyn NY 11201

---

ADA Leonard Joblove
360 Jay Street
Brooklyn NY 11201

---

ADA Camille O'Hara Gillespie
360 Jay Street
Brooklyn NY 11201

---

ADA Gamaliel Marrero
360 Jay Street
Brooklyn NY 11201

---

New York City Police Dept.
1 Police Plaza
New York, NY 11201